Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3634 | **DATE** | Oct. 15, 2001 |
| **CASE TITLE** | Louis Anderson v Board of Education of City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/27/01, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ n/a
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Memorandum opinion and order entered. Accordingly, defendant Board's motion to dismiss count IV is granted with prejudice. Its motion to strike plaintiff's allegations of personal property loss is denied. Plaintiff's amended complaint is due by 11/2/01. Defendants' answer is due by 11/19/01.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | OCT 16 2001 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 OCT 15 PM 4:01 | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |


| | |
|---|---|
| LOUIS ANDERSON, ) | |
| ) | |
| Plaintiffs, ) | No.   01 C 3634 |
| ) | |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| BOARD OF EDUCATION of the CITY of ) | |
| CHICAGO, a body politic and corporate, and ) | |
| TONI HILL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Louis Anderson, has filed a four-count complaint against defendants, the Chicago Board of Education ("Board") and Toni Hill ("Hill"), alleging that he was discriminated against by the Board on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* (Count I), by the Board and Hill on the basis of his sex in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, 42 U.S.C. §1983 (Count III), and by the Board on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* (Count II). Plaintiff also alleges that the Board violated the Illinois Personnel Record Review Act, 820 ILCS §40/1 *et seq.* ("Personnel Record Act") (Count IV). The Board has filed a hybrid motion that seeks to dismiss Count IV of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and also to strike various paragraphs within plaintiff's complaint pursuant to Rule 12(f). For the reasons explained below, the Board's motion is granted in part and denied in part.

## FACTS

For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Plaintiff, a fifty-five year-old male, worked as a Recruiter and Placement Officer of grade school and high school teachers for the Board from early November 1998 until late June 2000. In this position, plaintiff's performance evaluations were always more than satisfactory and several of the school principals with whom he worked praised his work. In June 1999, Hill, a female under the age of forty, became plaintiff's immediate supervisor. From that time on, Hill and the Board criticized or ridiculed plaintiff's age or sex. On February 1, 2000, Hill and the Board suspended plaintiff for five days based upon Hill's false accusations that plaintiff was performing duties beyond the scope of his job description. About five months later, plaintiff's employment with the Board was terminated and his position was eventually filled with a female under the age of forty who, according to plaintiff, is less experienced, competent, qualified, and able to fill the position of Recruiter and Placement Officer than plaintiff.

At the time he was fired, plaintiff was the oldest Recruiter and Placement Officer employed by the Board. Plaintiff was told that he was fired because he "did not fit the mold of a recruiter," and he was ordered to leave his office immediately (in the company of police/security officers) or face arrest. Plaintiff was not allowed (on that day or ever, despite numerous requests) to return to his office to gather and remove his personal property. The Board also denied plaintiff's repeated requests to obtain a copy of the personnel file that chronicled his employment with the Board.

According to plaintiff, both his suspension and his termination were products of defendants' discrimination based on his age and sex. As a result of his discriminatory suspension and termination, plaintiff alleges that he has lost wages, seniority, and benefits, in addition to suffering a blow to his reputation and dignity, and general stress, humiliation, embarrassment, and emotional distress.

Plaintiff's seeks several million dollars in actual damages to cover past and future wages and other income and past and future benefits. Plaintiff also seeks compensation for his loss of personal property (which he defines as, "including but not limited to clothing, books, family pictures, pen and pencil sets, and other personal items and keepsakes") following his allegedly discriminatory termination. Additionally, plaintiff asks to be reinstated in his position with the Board, to be awarded several million dollars in compensatory damages from defendants, and also to receive payment for his attorneys' fees and other costs incurred through the instant suit. With respect to Count III specifically, plaintiff seeks two million dollars in punitive damages from Hill, which, he alleges, must be covered by the Board because it has the responsibility to "'insure' or 'indemnify' . . . Hill for all damages awarded including all compensatory and punitive damages."

## LEGAL STANDARDS

### I. Motion to Dismiss

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiffs' allegations entitle them

3

to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## II. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides in part: "On motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, motions to strike are not favored. Seoud v. E. F. Hutton & Co., Inc., 720 F. Supp. 671, 686 (N.D. Ill. 1989). The court will not strike a matter from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation. Capitol Indemnity Corporation v. Tranel Developments Inc., 144 F.R.D. 346, 347 (N.D. Ill., 1992). Moreover, pleadings will not be stricken unless the moving party is prejudiced. Id. Consequently, motions to strike are frequently denied "when no prejudice could result from the challenged allegations, even though the matter literally is within the category set forth in Rule 12(f)." 5 Wright & Miller, Federal Practice and Procedure, §1382. Prejudice results when the matter complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party. Id.

## DISCUSSION

The Board makes three propositions in its motion. First it argues that Count IV should be dismissed because plaintiff failed to exhaust his administrative remedies under section 12(b) of the Personnel Record Act. Second it asserts that paragraphs 50, 51 and "M" of plaintiff's section 1983 equal protection claim should be stricken because the Board is legally precluded from

indemnifying punitive damages. And third it contends that the court should strike every reference to plaintiff's loss of personal property in Counts I through III of his complaint as improperly pleaded.

**I. Motion to Dismiss Count IV—Plaintiff's Personnel Record Act Claim**

In Count IV, plaintiff alleges that the Board willfully and intentionally violated the Personnel Record Act, which requires employers like the Board to give employees like plaintiff access to his personnel records. See 820 ILCS §40/2. Plaintiff seeks "actual damages in excess of $1,000,000.00" plus prejudgment interest, a "declaratory judgment that [the Board's] actions constitute unlawful and intentional violations of the [Personnel Record Act]," a copy of the contents of his personnel file,[1] and an order barring the Board "from using any personnel record information to defend Plaintiff's claims in Counts I, II and III of this Complaint."

The Board asserts that this claim should be dismissed because plaintiff failed to exhaust his administrative remedies pursuant to sections 12(b) and (c) of the Personnel Record Act, which state:

> (b) If an employee alleges that he or she has been denied his or her rights under this Act, he or she may file a complaint with the Department of Labor. The Department shall investigate the complaint and shall have authority to request the issuance of a search warrant or subpoena to inspect the files of the employer, if necessary. The Department shall attempt to resolve the complaint by conference, conciliation, or persuasion. If the complaint is not so resolved and the Department finds the employer has violated the Act, the Department may commence an action in the circuit court to enforce the provisions of this Act including an action to compel compliance. . . .
>
> (c) If an employer violates this Act, an employee may commence an action in the circuit court to enforce the provisions of this Act, including actions to compel

---

[1] The Board informs the court that plaintiff has received a copy of the contents of his personnel file since filing the instant suit.

5

compliance, where efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed and the Department has not commenced an action in circuit court to redress such violation. . . .

According to the Board, to enforce the Personnel Record Act, plaintiff must first file a complaint with the Illinois Department of Labor pursuant to subsection (b) above. A private cause of action arises under the act only "where efforts to resolve the employee's complaint concerning [an alleged] violation by conference, conciliation or persuasion pursuant to subsection (b) have failed and the Department has not commenced an action in circuit court to redress such violation." Thus, defendants contend, because plaintiff did not pursue his Personnel Record Act claim with the Department of Labor, Count IV must be dismissed.

Plaintiff responds to this argument by pointing out that the language of section 12(b) above is permissive, not mandatory; the statute provides that employees like plaintiff *may* file a complaint with the Department of Labor, not that he or she *shall* or *must*. Plaintiff also cites In the Matter of Judy C. Agno v. Illinois Masonic Medical Center, 1998 ILHUM LEXIS 377, *24 (IHRC June 25, 1998), wherein the Illinois Human Rights Commission stated that, "section (c) [of the Personnel Record Act] allows the employees to file directly in Circuit Court to have the provisions of the Act enforced," and argues that this language contradicts the Board's contention that plaintiff should have filed a complaint with the Department of Labor before commencing the instant suit.

Illinois courts have not addressed the precise question posed by the Board's motion.[2] Thus, the court must construe the language of the Personnel Record Act according to its "plain and ordinary meaning" to determine whether the Illinois legislature intended plaintiff to seek redress of his claims through the Department of Labor prior to filing the instant suit. Thomas v. Greer, 573 N.E.2d 814, 816 (Ill. 1991). In construing the statute, the court cannot interpret the language of each section individually; rather, the court must examine the language in each section in the context of the entire statute. Henrich v. Libertyville High Sch., 712 N.E.2d 298, 302 (Ill. 1998).

In construing the plain and ordinary meaning of the Personnel Record Act, the court concludes that the Illinois legislature intended that the Director of the Department of Labor be

---

[2] References to the Personnel Record Act within decisions of other courts in this district provide no solid guidance, either. Some dicta appears to support plaintiff's argument. For example, in Bogosian v. Board of Educ. of Community Unit Sch. Dist. 200, 134 F. Supp. 2d 952, 960 (N.D. Ill. 2001), the court stated that, "The Illinois Personnel Record Review Act . . . provides a private right of action for employees who are denied access to personnel records or whose records are divulged without written notice." See also Scurto v. Commonwealth Edison Co., 2000 U.S. Dist. LEXIS 16171, *61 (N.D. Ill. Sept. 27, 2000) ("If an employer violates [the Personnel Record Act], an employee may commence an action in the circuit court to compel compliance if necessary."). (Of course, the existence of a private right of action alone does not negate an administrative exhaustion prerequisite to filing suit, assuming one exists.)

And there is also dicta supporting defendants' argument. For example, in outlining the summary judgment arguments of both parties in Howard v. Sweetheart Cup Co., 2001 U.S. Dist. LEXIS 8682 (N. D. Ill. June 25, 2001), the court noted that the defendant argued that the "plaintiff failed to exhaust his administrative remedies" under the Act, and that the plaintiff responded that he "sufficiently exhausted his administrative remedies under the [Act] by filing a complaint with the [Illinois Department of Labor]." Id. at *12, *25; cf. Flasza v. TNT Holland Motor Express, 159 F.R.D. 672, 675 (N.D. Ill. 1994) (reciting among the relevant facts the plaintiff's filing of a complaint alleging a violation of the Personnel Record Act with the Illinois Department of Labor and the Department of Labor's issuance of a subpoena to the employer for the records it was withholding). (Of course, in both instances the courts were merely reiterating assertions made by the parties—none of which had any bearing on the ultimate holdings of the courts.)

7

the primary enforcer of the statute, and that an employee's private right of action arises only when the Director is unable to resolve the dispute between the parties and also elects to forego legal recourse. This intention is evident in section 12(a) of the Act, which reads: "The Director of Labor or his authorized representative shall administer and enforce the provisions of this Act." This intention is also manifested in section 12(c), which premises an employee's right to "commence an action in the circuit court to enforce the provisions of this Act" on the failure of the "efforts to resolve the employee's complaint . . . pursuant to subsection (b)" and the Department of Labor's decision not to commence a lawsuit to redress the employer's violation.

As the Board points out, if subsection (c) did not contemplate prior action through the Department of Labor as a prerequisite to legal recourse, there would be no need to reference subsection (b) in subsection (c). From an even more practical stance, it is improbable that the Illinois legislature would risk increasing the burden on the court system with claims of personnel record foul play when the Department of Labor is primarily available to resolve such claims. Thus, the legislature declared that the Director of Labor "shall" administer and enforce the provisions of the Act. With an act as clearly and broadly written as the Personnel Record Act,[3] it is difficult to imagine that forcing an employer to comply with the act would require more than a directive from the Director of the Illinois Department of Labor.

---

[3] In fact, the court notes that the current version of the Act cured constitutional defects identified in its predecessor. In 1987, the Illinois Supreme Court found the provisions of the prior version to be so ambiguous and inconsistent that an employer of ordinary intelligence could not determine with reasonable certainty which personnel documents were subject to disclosure. See Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc., 515 N.E.2d 1222 (1987). In contrast, the court's research has not disclosed a single complaint about the current version.

Thus, the court concludes that, in enacting the Personnel Record Act, the Illinois legislature intended that attempted resolution through the Department of Labor be a prerequisite to filing a claim in court. On that basis, Count IV of plaintiff's complaint is dismissed because plaintiff failed to exhaust his administrative remedies prior to filing the instant suit.[4]

**II. Motion to Strike Paragraphs 50, 51 and "M" of Count III—Plaintiff's §1983 Claim**

Paragraphs 50 and 51 of plaintiff's complaint allege that because the Board is required to insure or indemnify Hill for plaintiff's claims in Count III of the complaint, the Board is a proper party to that claim. Paragraph "M," styled as a requested remedy, asks the court to: "Enter an order that 105 ILCS 5/34-18.1 requires [the Board] to 'insure' or 'indemnify' . . . Hill for all damages awarded including all compensatory and punitive damages."

The Board moves to strike these allegations on the basis that, contrary to their assertion, the Board is actually legally precluded from indemnifying any award of punitive damages assessed against Hill. The Board relies on the Illinois Local Government and Governmental Employee Tort Immunity Act, 745 ILCS §10/2-101 *et seq.* ("Tort Immunity Act"), to support this argument, asserting that it is a "local public entity" as defined by section 1-206 and, pursuant to sections 2-102 and 2-302, it is therefore exempt from paying or indemnifying the payment of punitive damages.

---

[4] At the conclusion of their Count IV dismissal argument, defendants ask the court to strike paragraphs 39, 40 and 41 from plaintiff's complaint without providing any support for why the court should indulge their request. These paragraphs, which contain plaintiff's allegations that he requested but was not given access to or copies of his personnel records, have been incorporated into Counts I, II, and III of the complaint (apparently so plaintiff can argue that they are further evidence of defendants' discriminatory acts). Lacking any basis on which to preclude plaintiff from using paragraphs 39, 40 and 41 (for this or any other purpose), the court denies defendants' request.

9

Plaintiff counters that 105 ILCS §5/34-18.1 applies, not the Tort Immunity Act. Section 34-18.1 states that:

> The board shall insure or indemnify and protect the board . . . or any agent, employee, teacher, student teacher, officer, or member of the supervisory staff of the school district against financial loss and expense, including reasonable legal fees and costs arising out of any claim, demand, suit, or judgment by reason of alleged negligence, alleged violation of civil rights . . . provided such . . . [person or entity being insured, indemnified or protected] at the time of the occurrence was acting under the direction of the board within the course or scope of his duties.

The plaintiff in Agnew v. Board of Educ., 1998 U.S. Dist. LEXIS 10195, *21 (N.D. Ill. July 7, 1998), made an argument nearly identical to that propounded by plaintiff in the instant case. The court in Agnew responded by finding that section 34-18.1 was "irrelevant" because the plaintiffs' complaint did not contain allegations that the individual defendant was acting pursuant to the Board's direction.[5] See id. (noting that section 34-18.1 states that it applies only when the individual defendant is "acting under the direction of the board within the course or scope of his duties"). Despite this finding, the court went on to explain that,

> the . . . Tort Immunity Act shields the Board from punitive damages in actions brought indirectly against it. 745 ILCS [§]10/2-102. Accordingly, even if the plaintiffs could successfully state a claim against the Board, they would not be entitled to punitive damages. Their claims for punitive damages against the Board are therefore stricken with prejudice. Id.

The same result applies in the instant case. As Judge Nordberg explained in Burns v. Cineplex Odeon, 1996 U.S. Dist. LEXIS 12886 (N.D. Ill. Aug. 29, 1996), the Supreme Court has declared that municipalities are immune from punitive damages under civil rights laws and,

---

[5] In the instant case plaintiff alleges that, "At all times herein, . . . Hill acted under color of law, statutes, customs, or ordinances of the State of Illinois and the [Board]." Whether this (apparently insufficient) allegation triggers section 34-18.1 in the instant case does not matter, however, because, as explained below, the Tort Immunity Act trumps section 34-18.1.

10

while federal or state law may waive that immunity, Illinois has reaffirmed it for local public entities via the Tort Immunity Act. Id. at *36-37 (citing Adams v. City of Chicago, 865 F. Supp. 445, 447 (N.D. Ill. 1994); Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Kolar v. County of Sangamon, 756 F.2d 564, 567 (7th Cir. 1985)).

Plaintiff does not contest that the Board fits the description of a "local public entity" under section 1-206 of the Tort Immunity Act. Plaintiff also does not contest that section 2-102 of the Tort Immunity Act clearly and unambiguously states that local public entities are not liable for punitive damages. Indeed, it states: "*Notwithstanding any other provision of law*, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party"(emphasis added). And, just in case that language is not clear enough, the legislature saw fit to add the following language in section 2-302: "It is hereby declared to be the public policy of this State . . . that no local public entity may elect to indemnify an employee for any portion of a judgment representing an award of punitive or exemplary damages."

The Tort Immunity Act's prohibition of a local public entity paying punitive damages therefore trumps 105 ILCS §5/34-18.1. Accordingly, paragraphs 50, 51 and "M" in Count III of plaintiff's complaint are stricken to the extent they seek punitive damages[6] because they are immaterial under Rule 12(f) and, by their own terms, prejudicial to the Board.

---

[6] The court makes no finding with respect to whether the Board is required to insure or indemnify Hill for any of the other types of damages sought in Count III of plaintiff's complaint.

11

### III. Motion to Strike References to Plaintiff's Loss of Personal Property in Counts I-III

Along with the damages plaintiff seeks in Counts I, II and III of his complaint, he asks that he be awarded the "actual damages which [he] has suffered including but not limited to damages for the loss of [his] personal property." The Board moves to strike these lines from plaintiff's complaint, and with them plaintiff's allegations that Hill and the Board did not allow him to recover his personal belongings. The Board argues that these allegations should be stricken because they are beyond the scope of the Charge of Discrimination plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"). The Board also argues that these allegations give rise to a separate cause of action for replevin and therefore are not properly included in plaintiff's Title VII action, his ADEA claim, or his section 1983 equal protection claim. And, finally, the Board argues that plaintiff's allegations of lost personal property are insufficient to state a prima facie case of discrimination.

Plaintiff responds that there is no authority requiring him to plead or "exhaust" his claims for damages in his EEOC charge before he can seek those damages in federal court. The EEOC investigates only adverse employment actions, and plaintiff does not claim that his loss of personal property constitutes an adverse employment action. Plaintiff also maintains that he is not attempting to establish that the Board discriminated against him because of his sex or age by not allowing him to retrieve his personal belongings after being fired. (In fact, plaintiff admits that the opposite is true—all employees terminated from the Board receive this same regrettable treatment.) Instead, plaintiff says these allegations are included in his complaint to support his claim for damages based on his personal property loss only. According to plaintiff, he is just as

12

entitled to receive these damages as he is to receive compensation for lost wages, benefits, or any other damages.

Plaintiff is correct that there is no authority requiring him to list the damages resulting from defendants' alleged discrimination in his EEOC claim.[7] Further, the court is puzzled by the Board's attempt to force plaintiff to file a separate claim for replevin; such a claim would be fruitless given the fact that defendants informed plaintiff over a year ago that his personal belongings were no longer able to be recovered. See 735 ILCS §5/19-101 ("Whenever any goods or chattels have been wrongfully . . . detained, an action of replevin may be brought *for the recovery of such goods or chattels*.") (emphasis added). Additionally, the Board is simply mistaken in its assertion that plaintiff's loss of property allegations must be stricken because plaintiff has admitted that the Board does not discriminate (on the basis of age or sex or otherwise) in confiscating fired employees' personal belongings. If the Board's logic were sound, plaintiff would also have to show that the Board discriminates in not paying employees after they fire them in order for plaintiff to seek damages based on his lost wages. Nonsense. Under prevailing case law, plaintiff's allegations need only be "reasonably related to the allegations of [his EEOC claim] and grow out of such allegations," which clearly these allegations are. See Jenkins v. Blue Cross Mutual Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976) (en banc), cert. denied, 429 U.S. 986.

Based on all this, the court finds that the Board has not offered a suitable reason to strike plaintiff's allegations of damages deriving from his lost personal property; these allegations are not redundant, immaterial, impertinent, or scandalous and the Board has not shown them to be especially prejudicial, either. See Fed. R. Civ. P. 12(f); Capitol Indemnity Corporation, 144 F.R.D. at 347; 5 Wright & Miller, Federal Practice and Procedure, §1382. Thus, the court denies

---

[7] This argument is so weak, in fact, that the Board disowns it in its reply brief.

the Board's motion to strike paragraphs 27 through 36, paragraph 44, and the last clause of paragraph "B" in Counts I, II and III.

## CONCLUSION

The Board's motion to dismiss Count IV of plaintiff's complaint is granted with prejudice and paragraphs 50, 51 and "M" in Count III of plaintiff's complaint are stricken to the extent they seek punitive damages. The court denies the Board's motion to strike plaintiff's allegations of personal property loss. Plaintiff is directed to file an amended complaint conforming to this opinion on or before November 2, 2001. Defendants shall answer the amended complaint on or before November 19, 2001. This matter is set for a status hearing on Tuesday, November 27, 2001, at 9:00 a.m.

**ENTER: October 15, 2001**

_____
Robert W. Gettleman
United States District Judge