# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 3634 | DATE | June 17, 2003 |
| CASE TITLE | Louis Anderson    v    Board of Education, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing set for 7/9/03, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant Board's motion for summary judgment with respect to counts I and II is denied. Defendant Hill's motion for summary judgment with respect to count III is denied. Board's motion for summary judgment with respect to count III is granted.
(11) ■ [For further detail see order attached to the original minute order.]

|   | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
|   | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUN 2 0 2003 | |
|   | Notified counsel by telephone. | | date docketed | 78 |
|   | Docketing to mail notices. | | | |
|   | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
|   | Copy to judge/magistrate judge. | | | |
|   | GDS | courtroom deputy's initials | 03 JUN 19 PH 12: 25 | date mailed notice |
|   | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01 C 3634 JUN 2 0 2003 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| BOARD OF EDUCATION OF THE CITY OF | ) | |
| CHICAGO, a body politic and corporate, and | ) | |
| TONI HILL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In his first amended complaint, plaintiff Louis Anderson seeks damages, injunctive and declaratory relief against the Board of Education of the City of Chicago (the "Board") and his former supervisor, Toni Hill, arising from alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Equal Protection Clause of the Fourteenth Amendment. Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the reasons stated herein, defendants' motion is granted in part and denied in part.

**FACTS**

Plaintiff, a 57 year old male, was hired by the Board to work as a recruiter in November 1998. In June 1999, the Board hired Hill, a 41 year old female, who became plaintiff's supervisor. In August 1999, Hill divided the recruiting department into three areas: (1) principal services, which worked with principals to determine teaching needs; (2) recruitment, which went to job fairs and colleges and placed advertising to gather candidates for principals to interview;

and (3) the enrollment center, which completed the paperwork for new employees. Plaintiff was assigned to the recruitment group.

The parties dispute whether plaintiff's duties included "enrolling" new employees. According to plaintiff, his duties as a recruiter were to recruit teachers for vacancies in his assigned regions, review applications and resumes, and "check" and "give out" paperwork to candidates who were selected to fill vacancies. Defendants appear to characterize checking and giving out paperwork as "enrollment," and ultimately disciplined plaintiff "because he refused to stop performing this duty." More specifically, Hill issued plaintiff a three-day suspension in October 1999 and a five-day suspension in January 2000 because, according to defendants, plaintiff continued to "enroll" employees despite Hill's directive to stop doing performing tasks for other employees without her consent. In response, plaintiff disputes that his handling of paperwork constitutes "enrollment" and maintains that "he was suspended [in January 1999] for handling walk-in candidates which was part of his assigned duties at the time."

The parties agree that no other recruiters were disciplined for "enrolling" employees. According to Hill's affidavit, no other recruiters were engaged in enrolling hired candidates. Both parties point to other staff members, such as Sankarsingh and Trinidad, who were terminated by Hill. The record does not reflect that these staff members worked as recruiters, however.

In February 2000, Hill sent a memo to plaintiff entitled, "Outline of Job Responsibilities," which did not include any reference to paperwork or enrollment for hired teachers. Rather, the headings on the memorandum were as follows: (1) courteously counsel walk-in candidates within a reasonable time; (2) answer phone calls from candidates; (3) provide liaison relationship

with the following colleges/universities; schedule events and cover the career fairs; (4) recruit for Region 3 vacancies; and (5) provide a written summary of all activity each Friday by 3pm. Plaintiff's recruiting responsibilities were delineated as follows: maintain the Region 3 vacancy list according to guidelines provided; add all new vacancies and cancellations to the vacancy list daily; follow-up with Region 3 principals to ensure vacancies are accurate; and provide resumes to Region 3 principals with openings.

Plaintiff contends, and defendants concede for the purposes of this motion, that at more than one staff meeting between June 1999 and June 2000, Hill made the following comments:

(1) "We put the older players in the outfield and the younger players in the infield. Like you[,] Heller and Anderson, we will put you two guys in the outfield and let the younger players up here in the infield... and we will do it that way because you older guys cannot run the ball down as well as the younger players."
(2) "If you guys cannot do it, get out of the way, because we girls can get the job done."

By March 2000, a new database was created so that the recruiters could manually enter job orders for teaching vacancies that they received from a variety of sources, such as telephone calls and faxes. The parties agree that plaintiff was responsible for entering Region 3 vacancies into the database, and that it was "important" to have this information entered in a timely fashion.

Plaintiff was on vacation from Monday, June 19, 2000, until Monday, June 26, 2000. According to defendants, Hill directed plaintiff "to enter all teacher vacancies for region three into the database before he left on vacation." Plaintiff contends, however, that Hill "did not give a specific time frame" for entering the vacancy data. According to plaintiff, when he told Hill that he was not able to put his job orders into the database as quickly as he wanted because of his responsibilities regarding walk-in candidates, she told him to "do your best."

3

According to the database records attached to Hill's affidavit that was submitted in support of defendants' motion,[1] no Region 3 vacancies were entered between May 25, 2000, and June 21, 2000. In his deposition, plaintiff testified that the database system was down for the three weeks prior to June 15, 2000 (the Thursday before plaintiff left for vacation), which prevented all recruiters from entering vacancy data for their regions. Plaintiff's assertion is contradicted by the database records for the other five regions, however. The records for Regions 1, 2 and 5 consistently reflected entries during the three weeks preceding June 15, 2000. Of the remaining regions, Region 6 did not have any entries between May 22, 2000, and June 11, 2000, and Region 4 did not have any entries between May 23, 2000, and June 7, 2000.

According to defendants, when plaintiff left for vacation, he had more than 200 job vacancies that were not entered into the database. Plaintiff maintains, however, that there were only 50 job vacancies that had not been entered. Hill subsequently recommended plaintiff's termination, which became effective on June 26, 2000. The parties dispute whether Hill actually terminated plaintiff of her own accord, or whether she obtained "authorization" to terminate him from her supervisors, Xiomara Metcalfe and Carlos Ponce. According to plaintiff, Metcalfe and Ponce merely "acquiesced" in Hill's decision to terminate him.

---

[1] Plaintiff moved to strike these records due to defendants' "failure to lay a proper foundation for the admissibility of [the records] and the hearsay contained [therein]." Contrary to plaintiff's motion, however, the evidence does not "clearly exhibi[t] that [Hill] does not have knowledge regarding the computer database program, the accuracy of the report, how the report is generated, or what documents were used to create [the records]." To the contrary, Hill's deposition testimony indicates that she supervised employees' entry of data into the database, and plaintiff admitted in his response to defendants' Local Rule 56.1 statement that the database was created "under Hill's direction." Plaintiff's reliance on McKay v. Town & Country Cadillac, Inc., 2002 U.S. Dist. LEXIS 3103 (N.D.Ill. February 21, 2002), is thus misplaced, and plaintiff's motion to strike is denied.

4

The parties agree that no other recruiter was terminated by Hill during the time plaintiff worked for her. Nonetheless, in her affidavit, Hill submits that she issued verbal warnings and a written reprimand to recruiters Cheryl Bowman and Juan Hernandez, both of whom are under the age of forty, for failing to enter information into a database. According to Hill, Bowman was not terminated because she took steps to improve her performance, and Hernandez was not terminated because Hill's supervisor denied her recommendation.

In Counts I and II of his first amended complaint, plaintiff asserts claims of discrimination in violation of Title VII and the ADEA, respectively, against the Board. In Count III, plaintiff seeks damages against the Board and Hill individually under 42 U.S.C. § 1983 for unlawful sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Both defendants have moved separately for summary judgment. With this background in mind, the court turns to the law governing the instant dispute.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

5

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A. Plaintiff's Title VII & ADEA Claims

Plaintiff may establish that the Board discriminated against him on the basis of his age and/or sex either by presenting direct evidence that his age and/or sex were determining factors in his suspension and termination, or by using the indirect burden-shifting method of proof outlined in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). The Seventh Circuit defines direct evidence as evidence that, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." Cowan v. Glenbrook Sec. Svcs., Inc., 123 F.3d 438, 443 (7th Cir. 1997) (citation omitted).

As direct evidence of discrimination, plaintiff directs the court's attention to Hill's gender- and age-based comments at staff meetings between June 1999 and June 2000, specifically the two statements quoted above. The Board responds that, to establish a direct case of discrimination, the remarks must be "causally related to the adverse employment action at issue." Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 611 (7th Cir. 2001). See also Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 762 (7th Cir. 2001) (explaining that expression of discriminatory feelings by decisionmakers, or those who have input into decisionmaking, (1) around the time of, and (2) in reference to, the adverse employment action may constitute direct evidence of discrimination). According to the Board, plaintiff has not met his burden of

establishing a causal connection between the alleged statements and his subsequent suspension and termination.

Notwithstanding the Board's arguments, the court concludes that Hill's comments are sufficient direct evidence of discrimination to withstand the Board's motion for summary judgment on Counts I and II. The comments were made by plaintiff's supervisor, who the parties agree, at the very least, recommended plaintiff's suspension and ultimate termination. Moreover, the comments were allegedly made repeatedly between June 1999 and June 2000, a twelve-month period encompassing both plaintiff's suspension and his termination. Last, the comments were directed to putting the older players in the "outfield" and getting the guys "out of the way," which could certainly be interpreted as being related to the adverse employment actions ultimately imposed on plaintiff.

Although the Board persuasively argues that it could be "reasonable to infer that Hill was commenting on the work performance of Heller and Anderson" when she made her comment about putting older players in the outfield, the court is obligated to draw reasonable inferences in favor of plaintiff when evaluating the instant motion for summary judgment. Thus, a reasonable jury could conclude that Hill's remarks were causally related to plaintiff's suspension or termination, and denies the Board's motion for summary judgment with respect to Counts I and II.[2]

---

[2]Because the court concludes that plaintiff has produced enough direct evidence to survive the Board's motion for summary judgment, the court need not address the indirect method of proof.

7

B.  Plaintiff's 42 U.S.C. § 1983 against the Board and Hill

To establish that defendants violated 42 U.S.C. § 1983, "plaintiff must demonstrate that: (1) the defendant(s) deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law." Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Moreover, with respect to the Board, plaintiff must demonstrate that he was deprived of his constitutional rights pursuant to one of the Board's policies, customs or practices. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).

Plaintiff claims that defendants violated the Equal Protection Clause of the Fourteenth Amendment. To establish a prima facie case of discrimination under the Equal Protection Clause, plaintiff must show that: (1) he is a member of a protected class; (2) he was similarly situated to members of the unprotected class; (3) he was treated differently than members of the unprotected class; and (4) the defendant acted with discriminatory intent. McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993).

If plaintiff makes out a prima facie case, then defendants must articulate a legitimate, non-discriminatory reason for taking the action alleged by plaintiff to be discriminatory. Basith v. Cook County, 241 F.3d 919, 932 (7th Cir. 2001). If defendant produces such a reason, the burden shifts back to plaintiff to demonstrate that the proffered reason is merely pretext for discrimination. Id. Pretext may be shown "either directly by persuading the [jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." McNabola, 10 F.3d at 513, quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

In the instant case, defendants argue that plaintiff has not, (1) identified any similarly situated female employees who were treated differently than he, (2) produced evidence that defendants intentionally discriminated against him based on his gender, or (3) demonstrated that the defendants' stated reason for suspending and terminating plaintiff are merely pretext. Moreover, the Board argues that plaintiff has failed to show that it acted pursuant to a policy or custom, thus absolving the Board of liability under § 1983.

To meet his burden of demonstrating that a female employee is "similarly situated," plaintiff must demonstrate that there is someone who is directly comparable to him in all material respects. Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). The only arguably similarly situated female employee in the instant case is Cheryl Bowman, a female recruiter who also failed to enter data in a timely fashion.[3] Hill's affidavit and deposition testimony reflect that Hill reprimanded and issued a written warning to Bowman for her transgressions, which is indeed a less severe measure than the termination imposed on plaintiff.[4] If considered together with the undisputed fact that Hill also recommended the termination of another male employee, Juan Hernandez, for failing to enter data in a timely manner, a reasonable jury could conclude that similarly situated female employees were treated more favorably than plaintiff.

---

[3] Defendants have not demonstrated that the two female employees terminated by Hill, Sankarsingh and Trinidad, were similarly situated to plaintiff. To the contrary, Hill's supplemental affidavit describes them vaguely as "member[s] of [her] staff," rather than recruiters. Moreover, defendants admit that "no other recruiter was terminated by Hill during the time plaintiff worked for her."

[4] The Board's assertion that Bowman was not terminated because she took steps to improve her performance does not alter the court's analysis, since plaintiff was terminated the day he returned from vacation and thus was not given an opportunity to improve his performance with respect to data entry.

9

With respect to the remaining element of plaintiff's prima facie case, defendants' intention to discriminate against plaintiff, the record reflects that Hill repeatedly made inappropriate gender-related comments at staff meetings from June 1999 through June 2000 to the effect of, "If you guys cannot do it, get out of the way, because we girls can get the job done." Drawing all reasonable inferences in plaintiff's favor, the court concludes that a reasonable jury could find that Hill intended to discriminate against him on the basis of those comments. Thus, plaintiff has established a prima facie case of discrimination under the Equal Protection Clause.

In response, defendants submit that the legitimate, non-discriminatory reason for plaintiff's progressive discipline and termination is that he failed to follow directives - specifically, entering data into the database in a timely manner and not performing enrollment functions. The question then becomes whether defendants' proffered explanation is merely pretextual. The court concludes that the same gender-based comments that support a finding of discriminatory intent could also support a finding of pretext in the minds of a reasonable jury. Thus, defendants have failed to rebut plaintiff's prima facie case of discrimination under the Equal Protection Clause.

This does not end the court's inquiry, however, at least with respect to the Board. Although the parties agree that the indemnification provision of the Illinois School Code, 105 ILCS § 5/34-18.1, would make the Board a necessary party to a constitutional deprivation claim against Hill, well-established precedent prohibits imposing respondeat superior liability on the Board for Hill's actions. See, e.g., Monell, 436 U.S. at 691; Baxter ex rel. Baxter v. Vigo County School Corp., 26 F.3d 728, 734 (7th Cir. 1994). Rather, the Board can be held liable under § 1983 only if plaintiff's alleged constitutional injury was the result of the Board's policies,

10

customs or practices. Monell, 436 U.S. at 694. A "policy" includes the following: (1) an express policy; (2) a practice so widespread and permanent that it constitutes a custom or usage; or (3) action by a person with final policy-making authority. Baxter ex rel. Baxter, 26 F.3d at 735. Because plaintiff has failed to produce any evidence of an express policy, custom or usage, and it is uncontested that Hill is not a person with final policy-making authority, plaintiff's claim for damages against the Board under § 1983 must fail. Thus, although the Board is a necessary party to the instant litigation because of its obligation to indemnify Hill, the Board itself is not directly liable under § 1983 and its motion for summary judgment with respect to Count III is granted.

## CONCLUSION

For the reasons stated herein, the Board's motion for summary judgment with respect to Counts I and II is denied, and Hill's motion for summary judgment with respect to Count III is denied. The Board's motion for summary judgment with respect to Count III is granted, although the Board remains a necessary party to that count for purposes of indemnification. This case is set for status on July 9, 2003, at 9:00 a.m.

**ENTER:** **June 17, 2003**

Robert W. Gettleman
United States District Judge